The mother appeals from a Juvenile Court decree, issued after a trial that she did not attend, finding her unfit and dispensing with the need for her consent to the adoption of Vicky. On appeal, her sole argument is that the Department of Children and Families (department) failed to make "reasonable efforts ... to prevent or eliminate the need for removal from the home" and "to make it possible for the child to return safely to [her] parent or guardian." G. L. c. 119, § 29C, as appearing in St. 2008, c. 176, § 87. Because the mother did not timely raise this argument in the trial court, it is waived, and we therefore affirm the decree.[3]
Background. We summarize the most pertinent facts found by the trial judge. The mother was fifteen years old and herself in the department's custody when she gave birth to Vicky. At that time, the mother had been on the run for four months from her department placement. The mother appeared withdrawn prior to giving birth and initially would barely speak to department social workers and hospital staff. Based on concerns that the mother had not received regular prenatal care and that she had unstable housing, the department sought and obtained temporary custody of Vicky on an emergency basis. The judge determined that the department's efforts prior to removal were reasonable. At the seventy-two hour hearing, temporary custody in the department was continued; no new reasonable efforts determination was made.[4]
The mother presented as having some developmental delays, but due to her inability or refusal to speak, testing to determine her limitations was not done. She had an individualized education plan while in school, indicating "significant cognitive limitations," and had previously been recommended for psychiatric hospitalization, but a hospital bed was not found for her before she ran from her placement four months before Vicky's birth.
As of two months after Vicky's birth, the department's goal was reunification. The mother, however, generally refused to engage in her service plan tasks, which included learning how to hold Vicky and talking to her during visits; engaging in a parenting evaluation and individual therapy; attending school, a parenting class, and all of her own medical appointments; remaining in her own foster home; and meeting with her various department workers. The mother, who was permitted visits with Vicky "upon her request," had four visits in the three months following Vicky's birth, but did not speak to Vicky at these visits. The mother had no visits during the next ten months (up until the time of trial). The goal for Vicky was changed to adoption, and she was placed in a preadoptive home.[5] The mother went on the run for about two months, entered a placement in the STARR program for about ten days, and then went on the run again and had no further contact with the department in the five months leading up to trial.
After trial, the judge found by clear and convincing evidence that the mother was currently unfit and that termination of her parental rights was in Vicky's best interests. The judge drew a negative inference from the mother's failure to attend the trial. The judge considered the factors listed in G. L. c. 210, § 3(c ), and concluded that termination was supported by factors (iii), (v), (vii), (viii), (x), and (xii). Notwithstanding that the mother raised no challenge to the reasonableness of the department's efforts, the judge concluded:
" 'There is no doubt that [the department] is required to make reasonable efforts to strengthen and encourage the integrity of the family before proceeding with an action designed to sever family ties.' Adoption of Lenore, 55 Mass. App. Ct. 275, 278 (2002). The [d]epartment's obligation to provide services aimed at strengthening the family and reunifying children with their parents is contingent at least in part on parents' willingness to engage in those services. Adoption of Mario, 43 Mass. App. Ct. 767, 774 (1997).
"Mother's inability or refusal to speak to the [d]epartment as well as the multiple instances of her running from [d]epartment placements is indicative of her refusal to work with the [d]epartment to be reunited with [Vicky]."
Discussion. The mother argues that, because the department failed to make reasonable efforts as required by G. L. c. 119, § 29C, and in particular failed to offer services tailored to her difficulty in communicating verbally, her parental rights should not have been terminated. This argument was waived by the mother's failure to raise it before trial. We therefore express no view, nor do we imply any, on whether the department's efforts were reasonable.
"It is well-established that a parent must raise a claim of inadequate services in a timely manner." Adoption of Daisy, 77 Mass. App. Ct. 768, 781 (2010), S.C., 460 Mass. 72 (2011), citing Adoption of Gregory, 434 Mass. 117, 124 (2001). This requirement applies not only to the department's general reasonable efforts obligation, see Adoption of Daisy, 77 Mass. App. Ct. at 781-782, but also to the department's obligation to make reasonable accommodations for parents with disabilities:
"[A] parent must raise a claim of inadequate services in a timely manner so that reasonable accommodations may be made. If a parent believes that the department is not reasonably accommodating a disability, the parent should claim a violation of his rights under either the ADA or other antidiscrimination legislation, either when the parenting plan is adopted, when he receives those services, or shortly thereafter. At that point, the court or the department may address the parent's claim. However, where, as here, a disabled parent fails to make a timely claim that the department is providing inadequate services for his needs, he may not raise noncompliance with the ADA or other antidiscrimination laws for the first time at a termination proceeding."
Adoption of Gregory, 434 Mass. at 124.
A parent may pursue a claim of inadequate services either through an administrative fair hearing or grievance process under department regulations or by commencing a separate action alleging discrimination under the ADA. Ibid. We do not agree with the mother's argument that these remedies would have been too time-consuming to have afforded effective relief in this case (in which thirteen months elapsed between the department's emergency petition and the trial), and accordingly that her failure to pursue them should be excused. Merely initiating either type of claim would have put the department on formal notice that the mother believed the department's services and efforts were inadequate, giving the department an opportunity to review those issues and make any adjustments it deemed advisable.
Moreover, the mother could have raised her claims of inadequate services or lack of reasonable efforts through a motion alleging that the department had abused its discretion filed in the Juvenile Court while the case was pending. See Adoption of Daisy, 77 Mass. App. Ct. at 781. If the judge had determined that the department was not making reasonable efforts, "he had the equitable authority to order the department to take reasonable remedial steps to diminish the adverse consequences of its breach of duty." Care & Protection of Walt, 478 Mass. 212, 228 (2017). Even if such a determination came "too late to order the department to fulfil its duty to make reasonable efforts to eliminate the need for removal, [it need not have been] too late to ensure that the department fulfilled its duty to make it possible for the child to return safely to [her mother] or to attempt to hasten the time when that reunification would become practicable." Id. at 229. The mother did not pursue this course here.
"However, even where the department has failed to meet this obligation, a trial judge must still rule in the child's best interest." Adoption of Ilona, 459 Mass. 53, 61 (2011). "A determination by the court that reasonable efforts were not made shall not preclude the court from making any appropriate order conducive to the child's best interest." Ibid., quoting from G. L. c. 119, § 29C. See Care & Protection of Walt, 478 Mass. at 228.
Undoubtedly, "[a] judge may consider the department's failure to make reasonable efforts in deciding whether a parent's unfitness is merely temporary." Adoption of Ilona, 459 Mass. at 61. But we know of no case concluding that a judge must do so sua sponte, even where the parent has not raised the issue. Here, moreover, the judge concluded that, given the mother's history of running from department placements, she was unlikely to receive and did not appear to want any services to deal with her developmental limitations or otherwise. He further concluded that her limitations were "likely to continue for a prolonged indeterminate period."[6]
Conclusion. Although we do not underestimate the challenging circumstances faced by the mother, it was her obligation, if she wished to parent Vicky, to alert the department -- and if necessary the judge -- to any claimed inadequacy in the department's initial efforts to avoid removal and later efforts to achieve reunification. The mother's failure to do so, and her choice instead to refuse the services offered to her and to absent herself from her own department placement, created a difficult situation for the department, which must act to further the best interests of each child in its custody. The reasonableness of the department's efforts not having been litigated below, we will not determine the issue on appeal. The belated challenge to such efforts furnishes no ground for overturning the decree terminating the mother's parental rights.
Decree affirmed.

The father's rights were also terminated; he did not appeal.

After the trial in this case, the decision in Care & Protection of Walt, 478 Mass. 212, 223-225 (2017), emphasized that at the seventy-two hour hearing, if the department's custody is continued, a reasonable efforts determination must be made.

At trial, there was testimony that the foster parents, one of whom was the mother's cousin, were not willing to enter an open adoption agreement but were willing to allow contact with Vicky in the future if the mother were able to "get her life together and make significant improvements." The judge declined to order posttermination or postadoption contact, instead leaving the matter to the discretion of Vicky's legal custodian. On appeal the mother does not separately challenge that aspect of the decree.

At trial, the mother's counsel informed the judge that the mother was "AWOL," had been "missing for months," and had "made it very clear ... she is not coming back until she is 18 and she is not going to contact anyone[,] she says."